IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KNIGHT BROTHER, LLC, a Utah limited liability com., dba INTERMOUNTAIN RIGGING AND HEAVY HAUL,<br><br>Plaintiff,<br><br>vs.<br><br>BARER ENGINEERING CO. OF AMERICA, BARER ENGINEERING INTERNATIONAL, a Canadian corp., CENTERAL BEARING CORP., LTD., a Canadian corp., and DAVID BARER, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT DAVID BARER'S MOTION TO DISMISS<br><br><br><br>Case No. 2:10-CV-108 TS |

I.  INTRODUCTION

Defendant David Barer moves to dismiss the fourth cause of action (alter ego) in the Second Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and the fifth cause of action (fraudulent representation) as barred by the economic loss rule.

1

He also moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). An earlier Motion to Dismiss was mooted by the filing of the Second Amended Complaint.[1]

The Court finds that it has personal jurisdiction over David Barer, that the Second Amended Complaint states a claim for relief for alter ego and instrumentality, and does state a claim for relief for fraudulent representation because such a claim is not necessarily barred by the economic loss rule.

## II. FACTUAL BACKGROUND

The parties agree that in 2007, Defendant Barer Engineering Company of America (Barer Engineering) was awarded a contract to install machinery at Hill Air Force Base in Utah. In 2008, Plaintiff and Barer Engineering entered into a contract regarding work that Plaintiff was to perform, including installing a new foundation.

The following facts are alleged in the Plaintiff's Second Amended Complaint. Barer Engineering is a Vermont corporation.[2] Central Bearing Corporation (Central Bearing) is a Canadian corporation that does business as Barer Engineering and also does business as Baring Engineering International (BEI).[3] Barer Engineering, Central Bearing, and BEI are collectively referred to herein as the Barer entities. David Barer is a resident of Montreal, Canada.[4] David Barer controls all of the Barer entities and is the agent, officer,

---

[1] Docket No. 45. Docket text order denying May 5, 2010 Motion to Dismiss.

[2] Second Amended Complaint at ¶ 2.

[3] *Id.* at ¶ 2-3.

[4] *Id.* at ¶ 4.

2

and director of the Barer entities.[5] The Barer entities use each other's names in business and in emails. The Barer entites are undercapitalized.[6] The Barer entities share a common website and the use of a common bank account that is nominally held in the name of Central Bearing.[7] The Barer entities commingle funds and property and use funds of one entity to pay the debts and accounts of the others.[8] David Barer controls, structures, and operates the Barer entities for his own personal gain. He uses funds from the entities for his own purposes in order to confuse and avoid his own personal creditors as well as creditors of the entities.[9] David Barer uses the structures of the Barer entities to protect his own personal assets from creditors and to protect assets of the entities from their creditors.[10]

The contract agreed upon between Barer Engineering and Plaintiff included a higher than originally anticipated cost for foundation work because Barer Engineering provided incomplete information to Plaintiff.[11] Plaintiff included this higher cost in the contract in the

---

[5]*Id.*

[6]*Id.* at ¶ 55.

[7]*Id.* at ¶¶ 15-16, 35 (payments made to Plaintiff from Central Bearing account), 57-58. .

[8]*Id.* at ¶ 16.

[9]*Id.* at ¶ 59.

[10]*Id.* at ¶ 60.

[11]*Id.* at ¶ 17, 22-24.

3

form of a purchase order returned to David Barer for signature.[12] David Barer and Barer Engineering initially agreed to the higher cost but later disputed it.[13] According to Plaintiff, the revised cost raised the agreed cost of the foundation from $111,350 to $169,235, for a total contract price of $619,805.

David Barer later attempted to dispute the agreed higher price, but then promised that the Barer entities would pay it.[14] In reliance on that promise, Plaintiff agreed to complete the work.[15]

Plaintiff completed the work, it has been accepted by the Air Force, but the Barer entities have failed to pay for the work. The sum of $431,160.20 remains outstanding on the contract.[16]

## II. PERSONAL JURISDICTION

Unlike a claim under Rule 12(b)(6), when assessing personal jurisdiction under Rule 12(b)(2), the Court may consider matters outside of the pleadings without converting the

---

[12]*Id.* at ¶ 24.

[13]*Id.* at ¶ 27.

[14]*Id.* at ¶¶ 29-30.

[15]*Id.* at ¶ 31.

[16]*Id.* at ¶ 35.

motion to dismiss to one for summary judgment.[17]  "The Plaintiff bears the burden of establishing personal jurisdiction over the defendant."[18]

> "Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." The plaintiff may carry this burden "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." "All factual disputes are resolved in favor of the plaintiff when determining the sufficiency of this showing." "To defeat a prima facie showing of jurisdiction, the defendant must demonstrate that the presence of some other considerations would render jurisdiction unreasonable."
>
> "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." [19]

Under Utah's long-arm statute, "any set of circumstances that satisfied due process will also satisfy the long-arm statute."[20]  As the Tenth Circuit has explained, the "jurisdictional inquiry in Utah diversity cases is reduced to a single question: did the

---

[17] Fed. R.Civ. P. 12(d) (providing for treatment of motions under subsections (b)(6) and (c) as ones for summary judgment under Rule 56 when matters outside the pleadings are presented and considered by the court).

[18] *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).

[19] *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (quoting *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008); *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007); and *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009) (some alterations omitted; additional quotations and alterations omitted in *Bartile Roofs*).

[20] *Rusakiewicz*, 556 F.3d at 1100 (construing Utah's long-arm statute Utah Code Ann. § 78B-3-201(3) (1953) and quoting *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998)).

defendants have sufficient 'minimum contacts' with the state of Utah to establish personal jurisdiction over them?"[21]

David Barer argues that the allegations fail to show personal jurisdiction over him because he is not alleged to have acted on his own behalf rather than as an agent for one of his companies. He relies on the following rule explained in *Segil v. Gloria Marshall Management Co., Inc.*:[22] "Under what some courts have called the fiduciary shield doctrine, an officer and employee of a corporation may not be subject to the personal jurisdiction of a state solely on the basis of [his] activities in that state on behalf of the corporation which subject the corporation to the jurisdiction of the state."[23]  However, as further explained in the *Segil* case: courts have held "that where an individual has organized, used, and controlled a corporation for the sole purpose of carrying out her own business interests, the activities of the corporation within the forum are deemed the activities of the individual controlling the corporation."[24]

In the present case, Plaintiff supports its allegations of alter ego and instrumentality with several exhibits.  For the purpose of determining personal jurisdiction, the Court will consider those exhibits.  They include copies of payments made to Plaintiff from the common account in Central Bearing's name and a certified copy from the Montreal,

---

[21] *Fidelity & Cas. Co. of New York v. Philadelphia Resins Corp.*, 766 F.2d 440, 442 (10th Cir. 1985).

[22] 568 F.Supp. 915 (D. Utah1983).

[23] *Id*. at 919 (citing *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277, 1281 n.8 (10th Cir.1969)).

[24] *Id*. (citations omitted).

Canada, Registrar of Companies which show that Central Bearing is registered as doing business under the names of Bearing Engineering and CBI.[25] There is also an affidavit stating that Plaintiff's information supporting its alter ego and instrumentality claims initially came from an unnamed confidential source—a former employee of the Barer entities. That former employee reported the co-mingling of funds, the use of a single common bank account, David Barer's setting up of Barer Engineering as a sham corporation in New York and then Vermont, and David Barer's use of funds from Central Bearing (holder of the common co-mingled account) to pay his own personal expenses and for personal purposes in order to shield his assets from creditors.[26]

In the face of this prima facie showing, David Barer does not submit anything to meet his burden of "demonstrat[ing] the presence of some other considerations [that] would render jurisdiction unreasonable."[27] Instead, he merely points out that the information from the former employee is hearsay and argues for recognition of the corporate entities as a shield to his liability. However, that does not meet David Barer's burden of contesting the prima facie showing. Plaintiff supports some of the asserted hearsay with independent documentation, such as payment records to Plaintiff from the common account and the information that Barer Engineering is registered as a dba through which Central Bearing conducts its business. Further, as noted above, the allegations attributed to a former employee are also reflected in the allegations in the First Amended

---

[25] Pl.'s Ex. A.

[26] Pl.'s Ex. B (Rosander Aff. at ¶¶11-13).

[27] *Bartile Roofs,* 618 F.3d at 1159 (citation and quotation omitted).

7

Complaint. Those allegations must be accepted as true for purposes of this motion. Thus, for the purposes of this motion, Plaintiff has shown that the entities are undercapitalized; were structured, operated, and controlled as a single business by David Barer for the purpose of shielding his personal assets and assets held in the name of one or more of the entities from David Barer's own or Barer Engineering's creditors; and that he withdrew and used the assets of the entities for his own personal purposes. Plaintiff has also shown that due to the manner in which David Barer operates his entities and "his failure to observe the separate corporate personalities of each corporation," that observing or recognizing the separate corporate entities would sanction a fraud, promote injustice, or result in an inequity."[28]

The Court finds that Plaintiff has made a prima facie showing of personal jurisdiction over David Barer for purposes of specific jurisdiction over this dispute. The showing is that, as in *Segil*, David Barer "has organized, used, and controlled [his corporations] for the sole purpose of carrying out [his] own business interests, the activities of the corporation within the forum are deemed the activities of the individual controlling the corporation."[29]

Accordingly, the Court finds that Plaintiff has shown that David Barer has sufficient minimum contacts with the state of Utah to establish personal jurisdiction over him. There was purposeful availment of the privilege of conducting business in Utah in hiring a Utah company in Utah to perform work in Utah. There is nexus between those forum-related

---

[28] Second Amended Complaint at ¶ 61.

[29] 568 F.Supp. at 919.

contacts and Plaintiff's causes of action as they all arise out of the work performed. Because the disputes regarding the other Defendants will be determined in this forum, and there would appear to be little additional burden on David Barer to have his personal liability, which is related to the alter ego claim against another defendant, also determined in this forum. The state of Utah has an interest in providing a forum for resolution of the dispute arising from work contracted in and performed in the state, the Plaintiff has an interest in receiving convenient and effective relief in the same forum where the rest of the dispute will be resolved.[30] It furthers the interest of the interstate, and in this case the international justice system in having the entire dispute including the alter ego claims against two Defendants resolved in one efficient action. Therefore, the Court finds that it is not unreasonable to exercise personal jurisdiction over David Barer.

### III. ALTER EGO AND INSTRUMENTALITY

David Barer contends that Plaintiff has failed to state sufficient facts to support the fourth claim for relief for alter ego or instrumentality. Plaintiff marshals its allegations, discussed above, in support of its claim.

In considering a motion under Rule 12(b)(6), the Court assumes "the factual allegations are true and ask[s] whether it is plausible that the plaintiff is entitled to relief." In *Ashcroft v. Iqbal*,[31] the Supreme Court further explained its earlier *Twombly*[32] decision

---

[30] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1094-96 (10th Cir. 1998) (examining factors for establishing minimum contacts).

[31] 129 S.Ct. 1937 (2009).

[32] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

on "evaluating whether a complaint is sufficient to survive a motion to dismiss"[33] under Rule 12(b)(6):

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*] Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.[34]
>
> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Conclusory allegations are not enough to withstand a motion to dismiss.[35]
>
> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." [36]

The Court agrees with the parties that it applies the law of the state of incorporation, Vermont, to the issue of piercing the corporate veil under alter ego and instrumentalities.[37]

---

[33] *Iqbal*, 129 S.Ct. at 1940.

[34] *Id*. at 1949-50 (quoting *Twombly* 550 U.S. at 555) (additional citations omitted).

[35] *Gallagher v.Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) at 3 (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949.2d 868 (2009)).

[36] *Iqbal,* 129 S.Ct. at 1948 (quoting *Twombly*, 550 U.S. at 555 and 558).

[37] *See d'Elia v. Rice Development, Inc*., 147 P.3d 515, 521 -522 (Utah Ct. App. 2006) (applying the law of incorporation to alter ego claims but also noting that in *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1575 n.18 (10th Cir. 1990) the Tenth Circuit found it did not need to "resolve the general issue of what law applies to corporate veil issues because the law of the possible choices did not appear to differ materially).

Under Vermont law:

Although shareholders are not generally liable for the debts of the corporation, shareholders can be held liable where the corporate form has been used to perpetrate a fraud or to shield the shareholders' assets against legitimate claims of a creditor.

The court will look beyond the corporation to its shareholders for liability, that is, pierce the corporate veil, where the corporate form has been used to perpetrate a fraud, and also where the needs of justice dictate. Although an individual will not be held liable merely because he owns all the stock of the corporation, "in an appropriate case, and in furtherance of the ends of justice, a debtor corporation and the individual owning all its stock and assets will be treated as identical, independent of any question of fraud." In cases not involving fraudulent activity, the court will look to the facts and circumstances of each case to determine whether the corporate veil should be pierced in the interests of fairness, equity, and the public need. *In re Vt. Toy Works, Inc.*, 135 B.R. 762, 770 (corporate veil can be pierced to prevent injustice where shareholder has made personal use of corporate funds, where corporation is undercapitalized and where corporate formality has been entirely ignored).[38]

David Barer contends that the Second Amended Complaint relies upon conclusory statements and relies on allegations regarding the various corporate entities rather than only David Barer.

The Court has set forth the allegations above regarding alter ego and instrumentality. The Court finds that they state a claim for an alter ego claim under Vermont law. While there are many allegations regarding the corporations' relationships to each other, those allegations are partly relevant to the alter ego claim as to Central

---

[38] *Agway, Inc. v. Brooks*, 790 A.2d 438, 441 (Vt. 2001) (also quoting *Roberts v. W.H. Hughes Co.*, 83 A. 807, 812 (Vt. 1912); additional citation, quotation and footnote omitted).

Bearing,[39] but are also relevant to show Plaintiff's theory that David Barer disregarded the corporate formalities of all of the Barer entities in order to run them as "mere corporate straw[men]" for a personal business rather than respecting distinct corporate entities.[40] As noted in *Vermont Toy Works*, cited and relied on in *Agway*, Vermont law provides for piercing the corporate veil where, as alleged in the present case, the defendant has made personal use of corporate funds, the corporation is undercapitalized, and corporate formalities have been ignored.[41]

The Court finds that the Second Amended Complaint states a claim for alter ego and/or instrumentality as to David Barer.

## IV. FRAUDULENT REPRESENTATION

David Barer argues that the fraudulent misrepresentation claim is barred by the economic loss doctrine because although the terms of the contract are disputed, the claims arise out of the contract rather than a duty independent of any contractual obligations between the parties. He also argues that there is no allegation that he acted in his personal capacity.

Plaintiff argues that the doctrine does not apply to David Barer because he personally participated in the wrongful activity—assuring that "Defendants would pay the increased price" or that "Defendants would pay for the increased foundation work."[42]

---

[39] Second Amended Complaint, third cause of action.

[40] *Id.* at 264.

[41] *Id.*

[42] Second Amended Complaint at ¶¶64 and 66.

12

Plaintiff also argues that because there is a dispute over the formation of a contract, if the Plaintiff prevails on its alternative theory of unjust enrichment, there would not be a contractual obligation as contemplated by the economic loss rule and, therefore, the doctrine would not bar the tort claim.[43] Finally, Plaintiff argues that because David Barer is not a party to the contract, the rule does not bar fraud claims against him.

The parties agree there was a contract. But because they disagree as to the terms of the contract, it is possible that there was no meeting of the minds and, therefore, no contract. Plaintiff says the contract included the increased price for foundation work. Defendant Barer says it did not. Plaintiff says it was induced to continue performance of the contract based on the promise to pay the disputed additional amount.

> In Utah, the economic loss doctrine bars all tort claims seeking recovery for economic losses when the claims are not based on a duty independent of the contractual obligations between the parties. The doctrine applies to claims for intentional, as well as non-intentional, torts.[44]

However, Utah courts have found fraud claims may fall outside the doctrine because they are expressly designed for pure economic loss.[45] Further, because the contract and

---

[43] *See also Becker v. HSA/Wexford Bancgroup, L.L.C.*, 157 F. Supp. 2d 1243, 1253 (D. Utah 2001) (holding that where the plaintiffs' "contract law and quasi-contract law claims are plead in the alternative; until a jury determines whether there was or was not a binding contract between the parties, it would be premature to dismiss the Beckers' quasi-contract claims").

[44] *Anapoell v. Am. Express Bus. Fin. Corp.*, 2007 WL 4270548, at 6 (D. Utah Nov. 30, 2007) (citations omitted).

[45] *See Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 247 (Utah 2009) (noting that claims arising under a fiduciary duty, similar to fraud claims, lie outside the scope of the economic loss rule).

quasi-contract claims are pleaded in the alternative, if it is determined in this case that there was no contract, the economic loss rule may not apply. Therefore, the fraudulent misrepresentation claim is not clearly barred by the economic loss rule.

David Barer also argues that he is shielded from liability because there is no allegation that he acted in his individual capacity. However, because of alter ego claims, discussed above, he may not be shielded from liability. Further, an agent of a corporation may be personally liable for fraudulent acts if he participated in that tort.[46]

## V. ORDER

Based on the foregoing, it is

ORDERED that Defendant David Barer's Motion to Dismiss (Docket No. 31) is DENIED.

DATED   January 24, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[46] *See e.g. Armed Forces Ins. Exchange v. Harrison*, 70 P.3d 35, 41 (Utah 2003) (holding that an officer of a corporation cannot incur personal liability merely by holding the corporate office, but may incur liability by participation in the fraud).